### DERBES v. MARSHALL et al.
### No. 5677.

Court of Appeal of Louisiana.  Second
Circuit.

June 30, 1938.

Rehearing Denied July 15, 1938.

Albert E. Bryson, of Shreveport, for appellant.

Robt. L. Garrett and Samuel Abramson, both of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff seeks to enforce against defendant, Richard W. Marshall, and his property, an alleged materialmen's lien, based upon an open account of the sale and delivery of paints and paint ingredients to Carl I. Peterson who was engaged by Marshall to hang some paper in and to paint or repaint a residence and garage apartment at 2610 Emery street in the city of Shreveport.  The original contract between Marshall and Peterson consisted of a written proposal by Peterson to perform the work and furnish all labor and material therefor for $293, and its written acceptance by Marshall.  The contract was not recorded.  No bond was furnished by Peterson to protect Marshall against labor claims or materialmen's liens. During the progress of the work, the scope of the contract was enlarged by adding thereto other work and painting to be done, but no definite price or price unit was agreed to.  Marshall simply authorized Peterson to do the extra work and asked him to hold the expense down as much as possible.

The work required five weeks for performance, during which time Marshall made cash advances to Peterson aggregating $452.05. All labor bills were paid, but the account with plaintiff was not. It amounted to $168.97. The account, with supporting affidavit, was timely inscribed in the mortgage records to preserve and evidence the lien which the law has established in favor of a furnisher of supplies necessary to construct, improve or repair a building (Act 298 of 1926).

Defendant denies liability for the account sued on and denies that his property is encumbered by a lien to secure its payment. He denies that he authorized Peterson to incur the account with plaintiff and avers that he has paid Peterson for all labor performed and for material furnished by him needful to the fulfillment of their agreements. He attacks the legality of the lien asserted by plaintiff, prays for its erasure and for judgment for $50, the amount of counsel fee necessarily incurred by him to defend this suit and to have the evidence of the purported lien against his property erased.

Defendant called Peterson in warranty and in his original answer prayed for judgment against him in an amount coextensive to that, if any, as plaintiff shall recover against him.

Peterson excepted to the call in warranty on the ground that it disclosed neither a right nor cause of action against him. The exception was overruled. It is not pressed here. Answering, he avers that due to the oral enlargement of the scope of the written contract with defendant and the performance of extra work and furnishing of extra supplies thereunder, the total amount due by him therefor (labor and material) was $600.34, leaving a balance due him of $210.34, which includes the account herein sued upon. He reconvenes and prays for judgment against defendant for said $210.34. This demand, on exception, was stricken out. It was formally abandoned during the trial.

Subsequent to the filing of answer by Peterson to the call in warranty, defendant amended and supplemented his answer by averring: That the warrantor had performed services for him in addition to those required and performed under the original written contract, the total value of all services rendered being $293; that the warrantor during the progress of the work was advanced or loaned by defendant the total sum of $452.05, the difference between which and the $293 due for labor and services, is $159.05. He prays for judgment against Peterson for this last named amount, presumably in addition to the amount of judgment, if any, plaintiff should recover against him, although the prayer does not clearly reveal such intent. On objection, the amended petition was disallowed and passed out of the case.

Upon the issues tendered by the pleadings as above summarized, the case was tried, resulting in a judgment for plaintiff as by him prayed for and the rejection of defendant's demands against Peterson under the call in warranty. Failing in his efforts to secure a new trial, defendant suspensively appealed.

In his brief here defendant states that he resists plaintiff's demands on the following grounds:

1. That he has paid Peterson, the contractor, all that was due him;

2. That plaintiff furnished no material used by Peterson in the fulfillment of his contracts with defendant;

3. That he did not authorize Peterson to purchase the material from plaintiff, if used by him; and

4. That the alleged lien is invalid because he was not properly served with a sworn statement of the claim or the account sued on.

█ It is not made certain by the testimony that defendant has paid Peterson all that is due him for services rendered and material furnished by him in order to comply with the agreements between them. But should it be conceded that defendant's contention in this respect is correct, plaintiff's right as a furnisher of the material sued for would not thereby be unfavorably affected or impaired. The law lays down simple methods which, if availed of by the owner who contracts for the improvement of his real estate, provide ample security to him against paying more for such improvements than the contractor has agreed to do them for. If the contract for such improvements is in writing, a bond should be procured by the owner and recorded for his own protection. If he does not require such bond, then for his own protection he should adopt and follow such a course of dealing with the contractor as will guarantee him against the danger of having to pay more than he is obligated for under the contract.

The testimony leaves no doubt that the material involved herein was delivered by plaintiff on Peterson's orders to the buildings described in the written contract. Each delivery was receipted for by someone on the job. It is equally well established that the said material was consumed in the improvement of said buildings. But if it had been shown that some part of this material had not been consumed on said buildings, defendant's position would not have been improved thereby. A seller of material to a contractor, acting in good faith, who delivers same to the situs where such material is intended to be and should be used, is not required to follow the transaction to the ultimate end of seeing that such material is actually so used or consumed, as a condition precedent to the efficacy of the lien provided by law. To so require would be unreasonable. It would impose upon materialmen a burdensome duty which alone should be absorbed by the owner. The negative of defendant's contention has been generally held. Schreiber v. Edgar et al., 168 La. 443, 122 So. 285; Haynesville Lumber Company v. Casey, 165 La. 1065, 116 So. 559; Graphic Arts Building Company v. Union Indemnity Company, 163 La. 1, 111 So. 470; Bell v. Mecum, 75 N.J.L. 547, 68 A. 149, 127 Am.St.Rep. 809; 18 Ruling Case Law, 920.

In connection with this issue, plaintiff successfully established that for Peterson to have adequately complied with his agreements with defendant, the quantity of material sold him by plaintiff would not have been excessive, but, on the contrary, conservative.

The defense that Peterson was not authorized by defendant to purchase said material from plaintiff is not tenable. The contract plainly provides that Peterson should "furnish the labor and material according to the following specifications", etc. Nothing is said therein that defendant should approve or authorize orders for material. In such circumstances it is invariable that the contractor exercises his own volition as to from whom he acquires material. The contract did require that the paint used on the job should be the product of a well known manufacturer of such, and this was done.

We do not perceive any merit in the contention that the lien did not become effective for lack of service of the account on defendant. We do not think such service required by law as a condition precedent to the efficacy of the lien.

The lien which plaintiff seeks to enforce is founded upon Section 12 of Act 298 of 1926. This section provides that when the owner of real estate has entered into a written contract with another to erect, improve or repair a building thereon, but does not record the contract, as is required by said Act, "Then any person furnishing service or material or performing any labor on said building or other work may record in the office of the Clerk of Court or Recorder of Mortgages in the parish in which said work is being done or has been done a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same * * * shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person", etc.

This Section further provides that in such circumstances, that is, when the contract has not been recorded, in addition to said lien as security for the payment of his claim, the lienor may hold the owner personally responsible therefor. It does not appear in this Section of the Act, nor elsewhere therein, that it is necessary to the creation of the lien that any service whatever shall be made of the evidence of the claim or a copy of same, upon the owner. The Act simply says that the lien is created when the evidence of the claim has been inscribed in the mortgage records of the parish wherein is situated the improvement. Section 2 of this Act does require such service upon the owner of the improvement where the contract therefor has been recorded and a surety bond given and registered to protect the owner and others against labor, materialmen and other privileged claims. This Section of the Act has no application to work done by the owner without any contract at all, nor in cases, such as the present one, where the contract has not been recorded and no bond has been demanded or given, as required by the Act.

This question is discussed and passed upon in Musey v. Prater, 147 La. 71, 84 So. 498, wherein the court considered Acts 229 and 262 of 1916, both of which dealt with building contracts and the liens

and privileges securing payment of claims of laborers, materialmen, etc., and which are superseded by Act 298 of 1926. In the course of its discussion of the question, the court said (page 500):

"It was argued by counsel for the materialmen that it was unnecessary for the materialmen or the furnishers of materials to file sworn statements with the owner; that it was only necessary, in order to obtain and preserve their liens and privileges, to file such sworn statements with the recorder; and this they did; and that Act 229 was passed to meet the defense sustained in the Louisiana Glass & Mirror Works Case, supra [Louisiana Glass & Mirror Works v. Irwin, 126 La. 555, 52 So. 765].

"These two acts, when construed together, would seem to make it unnecessary for the materialmen, laborers, etc., in order to preserve their liens and privileges on the property of the owner, to file sworn statements with the owner. For Act 229, in giving to the materialmen, laborers, etc., privileges upon building being erected, directs in section 2, 'that any person claiming a privilege as aforesaid shall file in the office of the recorder of mortgages of the parish in which the land is situated, a statement setting forth the amount claimed,' etc. There is therein contained no requirement that the statement should be furnished to the owner.

"We are of the opinion that Act 229 refers to all building contracts, regardless of amount, whether verbal or in writing, where no bond, or a defective bond, is given by the contractor, and the contract and bond are not recorded in the manner provided for in Act 262; and, as none of these things were done by plaintiff in this cause, the materialmen, defendants, have the right to assert their liens and privileges given them under Act 229."

The demands of defendant against his warrantor, Peterson, were rejected. Considerable testimony was introduced without objection bearing upon the respective amounts due these parties to each other. There is some testimony indicating that Peterson did not complete all the work covered by the agreements. It also appears that one or two of the advances made to Peterson were intended as loans and not payments on account of the contracts. We are unable to determine definitely from the record the exact status of the accounts between the defendant and the warrantor and, in view of this fact, have decided that the proper disposition to make of the call in warranty is to non-suit it.

 Therefore, for the reasons assigned, the judgment in favor of plaintiff and against defendant, appealed from, is affirmed with costs; and the judgment rejecting defendant's demands against the warrantor is reversed, annulled and set aside, and for said reasons there is now judgment dismissing the call in warranty, as in case of non-suit. Costs incurred on account of the call in warranty shall be paid equally by defendant and the warrantor.