JOHNSON, Judge.
The plaintiff brought this action against Clarence P. Foret d/b/a C-4-A Construction Company to recover the unpaid remainder of the price of materials sold to said defendant for úse in construction of “twelve (12) units to Sunny South Motel, and office, apartment, port-cochere, and ground improvements,” under a contract *555 between said defendant, as contractor, and Joseph M. Lavigne, as owner. The contract price was $57,800.00. The Maryland Casualty Company was made a party defendant as surety on the contractor’s performance bond, and plaintiff asks for judgment against both defendants in solido. After trial, the district Court rendered judgment for $493.30 against 'Clarence J. Foret d/b/a C-4-A Construction Company and dismissed the suit as against Maryland Casualty Company. Plaintiff has appealed.
Attached and filed with the petition is an itemized statement of the account. The answer of Maryland Casualty Company makes a simple denial of each allegation. The separate answer of the contractor admits his status, the contract, etc., but denies that the materials were sold and delivered to him and denies the debt.
Deliveries of the materials were made by trucks driven by some ten or twelve drivers. The driver of each truck delivery took with him a dray receipt, or ticket, on which was written (generally by typewriter in capital letters) in appropriate places, the name and address of the purchaser “C-4-A Construction,” the date of the purchase, the date of the delivery, the invoice number, the order number and a complete and detailed description and quantity of materials being delivered by that truck.
Fred W. Hellbach, plaintiff’s credit manager and assistant secretary, testified that in connection with the establishment of credit requested by Clarence J. Foret d/b/a C-4-A Construction Company for delivery of materials to Sunny South Motel, Mr. Hellbach examined the official records of Jefferson Parish and found recorded the contract between Lavigne, as owner, and the contractor with contractor’s performance bond signed by Maryland Casualty Company as surety thereon. The witness said that all orders for materials were made on behalf of and in the name of Clarence J. Foret d/b/a C-4 — A Construction Company with the job designated as Sunny South Motel. He identified the itemized account (P-1) and verified the correctness thereof. The only payment made on the account was $667.33, paid on March 6, 1957. The total amount for all the materials was $1,939.08. Applying the credit, the amount claimed by this suit is $1,271.75.
Mr. Plellbach identified the dray receipts (P-2 through 43) which he said covered the deliveries to the contractor at Sunny South Motel. He also testified that these signed receipts are records of his office; that the procedure followed was that when the shipping department got an order from this contractor, someone called the credit department for approval for the purchase and then made up the shipment record; that the information came to him afterward when his office checked and entered the charge on the ledger, and that the truck drivers returned to his office the signed dray receipts after delivery of the materials.
• The delivery receipts were offered in evidence by plaintiff and the offering was objected to by counsel for defendant, Maryland Casualty Company. There was no objection on the part of the contractor’s counsel. On this objection the Court said:
“I will permit the introduction for what they represent. Of course counsel for defendant makes a good point— they don’t show delivery — that will have to be shown later. But I will permit them to be introduced in evidence.”
As stated above, the deliveries were made by a number of separate truck drivers. Counsel for plaintiff produced only one of these drivers, Horace Henry. This driver identified deliveries made by him represented by dray receipts P-9, 10, 13, 34, 35, 36 and 37. Henry testified that these deliveries were made to the Sunny South Motel and that each receipt is signed by the person in charge of the job at that time. The judgment of the trial Court included the amounts represented by the Horace Henry deliveries as properly proven. The judgment also includes additional amounts rep *556 resented by dray receipts P-2, 28, 38, 40 and 41, but the trial Judge did not explain the reason for approving the amounts represented by these tickets. The amount of the judgment is for the materials described on the twelve receipts listed above, a total of $493.30. There is no appeal by either defendant and no answer to the appeal taken by plaintiff.
Counsel for plaintiff contends that the dray receipts in themselves prove that the materials were delivered to the job site, and that it is unnecessary to produce each truck driver to verify each delivery and that the signature on each receipt is bona fide. Mere production of the dray receipts by plaintiff from its files with the unsupported statement of plaintiff’s office employee that the truck drivers returned the documents to his office after making deliveries is not proof in itself sufficient to establish that the deliveries were made to the job site and that the receipts were signed by persons apparently in authority. It is true that the plaintiff is not required to follow the material to prove that it was actually used by the contractor in the work, but the Court must know that the material was actually delivered to the proper place and to the proper person.
In this case, the contractor, by his testimony has supplied information that makes it possible to determine that the materials described on all the dray receipts, except three, were delivered to persons apparently authorized to receive the deliveries at the job site. Mr. Foret was called as a witness on cross-examination by plaintiff’s counsel. He did not deny, and it is clear from the evidence, that all the material was ordered by him or in his name, d/b/a C-4 — A Construction Company, for the Sunny South Motel job. The question is, was delivery made? Mr. Foret acknowledged that A1 Guillot was his superintendent on that job; that J. M. Lavigne was the owner; that Samson Charles Gros, Jr., was the contractor’s employee, and that any of his men were authorized to receive materials. He said that Oscar E. Gaspard was one of the sub-contractors on that job, and while the sub-contractor had not been authorized by him to receive materials, he explained that, as a matter of fact, what actually happens is that when the truck driver delivers materials he gets the person he finds in charge of, or working on, the job to sign the dray receipt. All of the above named parties signed various delivery receipts. While Foret said that he did not know their signatures, he would not say that these persons did not sign the receipts. He did not repudiate any of their signatures or authority. Flis testimony raises a strong presumption that these men received for him on that job site delivery of the materials described on the receipts which they signed. In support of that presumption we find that A1 Guillot, the superintendent, made out and signed order forms for materials, which forms were furnished by the contractor, and they contain in a proper space the information that the materials ordered thereon are for “job — S. S. Motel.” Printed on these order forms also is the instruction: “Mail all invoices as soon as possible after each purchase is made direct to C-Four-A Construction Company, Westwego, La.” .The materials described on these particular order forms were delivered with dray receipts, P-40 and 41, and A1 Guillot signed dray receipts P-16 through 41. There is no doubt that the signature on these delivery receipts is the same as his signature on .the order forms. A photostat of the original contract, signed by Joseph M. Lavigne, as owner, is in the record (D-l). The signature of J. M. Lavigne on dray receipts P-2, 3 and 4 and his signature on several others along with A1 Guillot is the same as that on the contract. Samson Gros, Jr., signed delivery receipts P-5, 6 and 7. Dray receipts P-8 through 15 were signed by O. Gaspard, who was a sub-contractor, and while he may not have had a formal power-of-attorney authorizing him to receive these materials for the contractor, his identity is verified by the contractor, and we are satisfied that his receipts properly represent delivery to the job site.
*557 In these circumstances, the presumption referred to above imposes upon the contractor the burden to rebut it. No serious effort has been made to rebut it and we hold that delivery has been proven of all materials except those described on three dray tickets, P-42 for $76.84, P-43 for $81.11, and the last one dated February 25, 1957, which was not given a number, for .$24.72. Deducting these three dray tickets, amounting to $182.67, and the credit payment of $667.33, from the total of $1,939.08, we find that $1,089.08 is the amount which plaintiff is entitled to recover.
We note that the two defendants were represented by separate counsel. Counsel for Maryland Casualty Company attempted to show by cross-examination of plaintiff’s witness, that Foret had another contract with Lavigne, signed on the same day, for the construction of a swimming pool at the Sunny South Motel, which it is suggested Foret signed for his corporation, Acqua Sports, Inc. It is further suggested by counsel, but not proven by the testimony, that some of the materials were used in the construction of the swimming pool. No definite proof in that respect was developed. Neither defendant called Mr. Foret as a witness. In fact, defendants did not call any witnesses whatever. We are not impressed with this suggested defense of a separate contract. The only thing Mr. Foret said about it when under cross-examination by counsel for plaintiff was that he completed construction of the motel units under contract before Christmas of 1956; that he did not start the swimming pool until January 1957; and completed it in the first part of March 1957. It is clear from the evidence that the work under the -contract by Foret d/b/a C-4-A Construction Company was accepted on March 7, 1957. All of the materials were ordered, billed and delivered in that name and all of the materials for which payment is being allowed herein were delivered to the contractor at the Sunny South Motel, for use in that job.
If there actually were a separate contract for the swimming pool at the Sunny South Motel, said defendant has completely misled the plaintiff by keeping that fact a dark secret. There is no evidence that any of this material was diverted from the use for which it was ordered and delivered. It would be utterly ridiculous to give any consideration to the separate contract suggestion as a defense.
All that the furnisher of materials to be used under a contract for private construction is required to do, in order to collect from the contractor and his surety, is to show by competent proof that the material was delivered to the job site. That has been done here, without doubt. Our Courts have passed on that issue to that effect so many times that it is not necessary to rehash those cases here. A few of these cases are: Haynesville Lumber Co. v. Casey, 165 La. 1065, 116 So. 559; Louisiana Lumber Supply Co. v. Reeves, La.App., 55 So.2d 64; Hortman-Salmen Co. v. Raymond, 13 La.App. 490, 127 So. 452; Graphic Arts Building Co. v. Union Indemnity Co., 163 La. 1, 111 So. 470; Hayes v. R. J. Jones & Sons, La.App., 56 So.2d 853; R. F. Mestayer Lumber Co. v. Tessner, La.App., 101 So.2d 238; Allen B. Cambre Lumber and Supply Co. v. Loomis, La.App., 94 So.2d 908.
The solidary liability of the surety is provided for by LSA-R.S. 9:4803.
The judgment of the trial Court dismissing plaintiff’s suit against Maryland Casualty Company is reversed.
The judgment in favor of plaintiff against the contractor is amended by increasing the amount of the judgment to $1,089.08, and that judgment is now recast and rendered in favor of plaintiff and against Clarence J. Foret d/b/a C-4 — A Construction Company and Maryland Casualty Company, individually and in solido, for $1,089.08, with legal interest thereon from date of judicial demand until paid and for all costs, including the costs of this appeal.
Reversed in part amended and recast.